You've made a big mistake. Anyway, whatever. Ten minutes to listen to him. Mr. Joseph Zadeh. This case involves a D.E.A. subpoena for a private physician for the medical records of 67 patients in a criminal investigation that admittedly targets those patients. This case is the first of its kind anywhere in the country as far as the attorneys in this case have been able to find. It is definitely the first case which a court has approved of the use of a D.E.A. subpoena to obtain any patient medical records. How is this different from a grand jury subpoena? That was never an issue that I think was raised in this case, so I'm not sure I can fully deal with it, but there are a number of differences. Particularly I would say the most significant is the fact that grand jury subpoenas arise out of the Constitution itself, which provides for the, if not all the procedural aspects, but for the justification of the grand jury. In addition, you don't have a government prosecutor necessarily looking for that. The evaluation of that is going to be based on people drawn from the laity that are going to be looking at that. I'm just asking about the standard of review and whether you get, whether the subpoena is enforced or not. How is this different from a grand jury proceeding? I think it is different. I think because of those different factors, the factors for a government search we would contend are subject to all the different standards that were laid down in the mayor's city of Seattle, et cetera. Those are the standards for all searches. You balance the need for it with the intrusion that's involved. And you look at all of the factors related to those. And in the course of evaluating administrative subpoenas, they're similar to grand jury subpoenas, and honestly I can't tell you all the ins and outs of the grand jury. That's not something that I recall being significantly briefed, and I don't think I could tell you the exact standards for the grand jury subpoenas in a given case. Well, you have here, you went before a magistrate before this, you had an opportunity to contest the administrative procedure under 803. That's more than you get on a grand jury. The grand jury, the prosecutor essentially issues a subpoena. And again, I apologize that I can't go into the details of that, but I do know that the courts have distinguished those, the significance of that, because of the constitutional basis of the grand jury subpoenas as well as the fact that it's being evaluated by individuals of society that are able to look at that and make the decisions based on those rather than a government employee whose very business is the investigation of crimes. That's one of the reasons why they've distinguished between those. All right. I thought that the United States District Court judge who referred it to a magistrate where you had an opportunity to challenge the petition, you're talking about a bureaucratic operation that operated under the statute and you were given the opportunity and you took it, I thought, to take this to the district court. We did. We had the magistrate make his findings and recommendations. We made lengthy objections to those that are in the record below. And then we appealed from the district judge's approval of the magistrate's decision. One of the many problems we have with this is that we don't believe either the magistrate or the district judge applied the correct constitutional standards, applied the correct . . . I think your argument really boils down to whether or not the . . . this is not a unilateral action by the administrative agency in that present posture it comes to us. It is rather . . . it is really under an order of the United States District Court. Yes, Your Honor. Okay. Get that straight. So the only we're talking about here is whether the sufficiency of the privacy . . . the character of the privacy interest claimed here is such as to trigger a higher standard of review or standard for compelling that . . . those submissions than was applied by the magistrate. Do you agree with that? I think it's not the only issue, but I definitely agree that is a primary issue, that we're looking at the standard that the magistrate and the district court should apply. Should it be a higher standard? We've also got the other issues is did they meet even the standard that the government says is applicable? Is the information that they provided, which we contend is a conclusory declaration of a government witness that if you change the names of the doctor and the change of patient could be used to obtain . . . That may be, but that's not the basis upon which this went forward. This went forward because after the United States District Court had looked at that, not just on the declaration of the employee itself. Now, what do you contend for is required? Is it a Fourth Amendment protected standard or is it something more or less? I would contend for the Fourth if you're referring to a traditional probable cause standard. I would say in this situation at least that that would be an appropriate standard, but that's never been the primary basis for our argument. I think in this case you could apply the Fourth Amendment traditional probable cause standard because it is admittedly a criminal investigation and the government has admitted that it targeted the patients, that we would say that this is either a pretext or at least under Fifth Circuit language is now a predominant basis, and under that Fourth Amendment traditional probable cause should apply. More generally . . . Excuse me. Oh, go ahead. More generally we would say that that's not the test. The test that this Court has recognized as being the test from Kamara when you're faced with a new type of subpoena for a new type of subpoena versus the intrusion, and it looked in three factors that Roundtree discussed, the Kamara factors, which are the history of the subpoena. In this case, there's no history. In 45 years that this statute has been on the books, the DEA has apparently never used a subpoena to obtain medical records. In the briefing of Abbas Zeta, the appellant who passed away and has been dismissed, the briefing went to, included a number of sites that have used subpoena warrants under traditional probable cause to obtain patient medical records. So I think the history weighs in favor of a stronger standard. The second factor . . . You talk about patient records and expectations of privacy. Let me just remind you that this business of protection, the privacy of these medical records, the reality is that when you go get your prescription filled, there's a billion-dollar industry in this country that mines that data, all of the prescriptions. There's nothing secret about the drugs that are prescribed to me. What happens is that that prescription goes into a mine by a data company that sells it to the pharmaceutical houses. They put the detailed people out back in the doctor's office to see whether they're pushing enough of their brand medicine or whatever. My point being to you is that at least insofar as we're talking about writing prescriptions, that I have a difficult time finding the level of privacy that you contend for when the medical business is participating in this to the tune of billions of dollars. I mean that number seriously, billions of dollars. The expectation of me as a patient might be that my prescription and what my doctor has prescribed me is secret, but it is by no means so. Do you agree with that? Well, I think that's a great point, and it illustrates a big problem with this subpoena. This subpoena is not limited to the records that have to be required by the doctors regarding prescriptions. This asks for all medical records. The original was all medical records regarding these 67 patients, clean diagnostics tests, which were protected under Ferguson explicitly, and most importantly, the more significant and more private, the most private things in a person's life that have to be considered by a doctor. We're talking here about the statements to the physician himself, the statements of medical history. So when you're looking at a particular prescription, you have to look at everything in your past history to determine whether this might be a diagnosis, and those may be intrude into all kinds of things regarding abortions, birth control, behavior now, the particular behavior that might lead to pregnancy. Things of those nature are the most private in a person's life, and those are not part of the DEA's regulations. I have a factual question. Is it clear that the targets are only the patients, or is it that your client also some target in this? As far as I can tell, they're targeting everybody. I think that was the statement. She kept saying it was target the patients. I did not mean to imply that it was only targeting the patients, but they have admitted that it at least partially targeted. But we're sure that it's targeting the patients, so they need the identifying information of the patients rather than covering that up if they're just targeting your client. And that's exactly our contention, that that's the only reason why they need the patient identifying information is because of that targeting. Judge O'Connor's order doesn't require that it can be kept secret from the patients anymore, right? It was the secrecy under the . . . am I wrong on that? Okay. But now it's not secret. So have any patients tried to intervene now that it's not secret, or have they been . . . have your client notified the patients based upon Judge O'Connor's different order than the magistrate's judge, and have there been any efforts by the patients to come forward and intervene? I honestly can't speak to that. I can't make a representation on it. It's not in the record. I couldn't . . . it's not a question I can answer. But it seems like under Westinghouse or something, that would be important. The Third Circuit remanded to make sure they got notice, and then if anybody wanted to intervene because they had particular privacy rights, they could do so to protect their medical histories and all of that you were just talking about. That's right. And I think the problem with this case is they didn't get any notice to of it and an opportunity to intervene like the Westinghouse court gave. By the time it was able to do it, and whether they have notice and realize that they could intervene in an appellate proceeding where they could not produce any of the evidence regarding their specific privacy interests, I don't know how they could go about doing that. But you don't even know if your client notified them as pursuant to that? I can't say that. And I don't think it's . . . again, I don't think it's relevant to the appeal because of the fact that they could not raise any of those interests at the appellate stage. Going back to the Camara factor, some of which Judge Higginbotham already hit, the third factor is the privacy interest involved. And so we've got a scale from prescriptions on one end, the middle stage is diagnostic tests, and on the far end, all of the historical and behavioral statements that have to be made in order to make diagnosis, determine contradiction of drugs, et cetera. And I suspect the government will talk about how it's limited this subpoena, but the limitation is illusory because it still goes not only to just the prescriptions but also the conditions that form the basis for the prescriptions, the diagnosis, et cetera. So we're still dealing with a scenario where it could be as broad as the universe, and that's, in fact, what the district court decided. We challenged this in the objection saying, well, now we don't know what's intended to be taken out. The judge says it's all relevant. On the other hand, the investigation here is to the abuse of the Controlled Substance Act, that is free winning scripts. And the particular information that was allowed by the magistrate in the district court here is one that's directly relevant to that. I'm not saying it does not have privacy privilege. I'm going the other side of the equation now of the government's interest and how you balance that against these privacy interests themselves. But what they're investigating here is an abuse of the Controlled Substance Act, that these aren't genuine patients that are prescribing to that are with follow-up tests and so forth. You're writing scripts for drug abuse. And by looking at the evidence that can be compelling or not one way or the other, what's written and what the follow-up is, et cetera. And was there, in fact, a complaint of any patient here of a particular illness that was being prescribed? Whether they were prescribing illness or dealing drugs is what it translates to. And so that's what the government's looking at. I don't know what's there. I'm not suggesting that anything's going on wrong here. But that's what the government, that's what they're going for. Now, what do we do with that? You've got, on the one hand, this very strong interest, privacy interest, of course, I think, and you described it well. And I pulled out what I thought was a non-private material here, the scripts. I just didn't want to hung up on that. But the doctor-patient discussions, et cetera, that's certainly privacy. How do we balance that? I'm going to probably go past my time in answering that. Well, everybody else has today. Go ahead. The way we suggested, this is not elaborated on in the record, but it shows up in our joint report that we had proposed that we might be able to produce the records if we could resolve two issues regarding the use of the information. And we suggested that this could be produced if we protect the patients. Because that's the concern. The concern primarily is criminal targeting of the patients. How would you do that? We would do it the same way that Texas law does it. Texas law says you can't produce it if it's going to be used in a criminal investigation. We could get a guarantee from the government that use it for whatever you want to against Dr. Zeta. But if you can guarantee it won't be used against the patients themselves in a criminal investigation, then we resolve the state law problems. We probably resolve most possibly accepting some individualized abortion related things like that of patients themselves. But if the patient is a participant in the drug abuse itself, that is, they're filling 30, 40, 50, I have no idea what these evidence is, but they're filling 50 prescriptions of a controlled substance. In other words, the patient may be a distributor of drugs. But would you qualify that as well, that in the absence of some demonstration, you know, there would be no revelation of any of the data or information about particular individuals, absent some evidence that they were themselves a participant? But, see, that's probably the scheme that they seem to be investigating. These patients may not be genuine patients either. So how do you handle that? We don't know what they're investigating in either the district judge or the magistrate judge. All they've said is controlled substance of the act, which covers a broad range of activities, and there's no basis for determining what they may think. The language of the subpoena, I think the last line is, the last line of the subpoena itself was, it illustrates it pretty well. It's anticipated that a request of patient information may tend to demonstrate whether controlled substances were prescribed and or dispensed to patients consistent with the CEA. Well, that applies to every patient and every doctor in the United States. The records they're asking could be relevant to that question for anybody with any basis. There's just no factual basis for determining. Returning, though, to your question of what to do, absent some privacy interests of a patient, I see no prohibition in regulating controlled substance. The Congress cannot, as they've done in 803, operate the use of administrative procedures. You've got to have a distinct privacy interest. I think that's right, and that's what we're referring to with the patients. We've talked about their interests in things that go beyond prescription. I'll stay with this suggestion of yours that you could have protected those interests here by agreement, and I'm trying to understand what that would be. I'm not sure what it would need to be, because I don't know what the government rejected it out of hand. But under Texas law, for instance, the occupation code prohibits a doctor from providing records if those may be used in the prosecution or investigation of criminal charges against his patients, broadly off limits. So we've got that problem there. Under the Constitution, there may be more wiggle room. There may be an opportunity that you would say for particular purposes. I'm sure that you don't have a pretty direct conflict between the Controlled Substances Act and 803 and that particular provision you're talking about, but let's assume that that's not a problem. That goes to the preemption issue. If we're right on this, that it's not preempted, that Congress's intent . . . I don't want to go to preemption. I want you to stay with what you were saying before about how you're going to do this. If that applies, it's a bright line. Assuming it's not, let's just throw that off the table and just say we're just talking about the Fourth Amendment. Is that what I understand is the question here? How to resolve the Fourth Amendment issues? Yeah, we would say that the two parts of it would be prohibition against the criminal charges of the patients, perhaps with something else like what is in the statute regarding health care fraud. It's a prohibition there that anything found in medical records on that, subpoenas for health care fraud, cannot be used in any other context unless you go to the . . . unless it's there. So maybe under constitutional, there could be something else a judge could do with that. The other way we . . . Go ahead. The other way we propose the part of this to simplify things, because the only basis for this is the administrative regulation of the doctor, not the patients. It would be criminal, but no administrative regulations of the patients. The thing we propose is, okay, we redact the patient in identifying information. We provide these in a random format, patient one, patient two, patient three, and then give them to the DEA. They can make their evaluations just like the judge said, what they need to evaluate. You look at the condition. You look at the drugs. You look at the basis. Is this good? We can tell where all of this is done properly, regardless of the patient's name. And then if it looks like one or two patients or more are drug dealers or something, then you have a specialized, particularized need for patient one's records. And then you can go back to the court and say, we need patient one's identifying information. And then you can discuss whether they still have a privacy interest. But that's at a separate level of review. So it protects the general patient, who's not the drug dealer, from this intrusive review. I would say that would be right. I would say that it might be that second level review, because we're then dealing with a specific criminal agency. Then you can deal with all those points you were just talking about. But at the very least, the regular patient should be protected from having all of their medical. Exactly. Was it ever proposed to the government that just the prescription information would be turned over but not the medical history, the confidential discussions with the doctor? Was this argued before the court that it wasn't narrow enough because it allowed that level of the medical history and the discussions, which are different than the actual prescription records? I think that was definitely our point regarding the whole breadth of this. What occurred was the magistrate judge suggested that we have a conversation to see if we could resolve that. I can't honestly tell you the specific details of each conversation we had. I know we had some face-to-face meetings and phone calls to see what might be able to be done. What is in there in the joint status report is what the government proposed. This is what we'll cut it down to. And it still included the things that, in our view, would still pick up the patient communications, would still pick up diagnostic tests, would still pick up things that we could not agree to. Our counterproposal was, okay, there's no way we could ethically agree to this unless we could deal with redaction, deal with some protection of the patients, et cetera. But the court didn't limit it in any way based upon that, right? I think the magistrate judge and the district judge accepted the subpoena as limited by the government's joint status report. But in our objections regarding what that meant, my recollection is the district judge's order said, related to means, gave the official broad definition of related to. As I read it, it picks up everything. It seems like it's broader than what the government was willing to agree to. I don't know about that. That's why I'm in the joint status report. That's what we said. This is obviously intended as a limitation of something, but we can't tell what. And I think what the district judge did, though, was adopt pretty verbatim, if I remember correctly, the government's position in response to the objections. I think that was what the government said. Related to means everything, Judge. So I think it's completely illusory, this proposal. Okay. We save some time for a vote. Thank you. Good morning. May it please the Court, Karen Schoen on behalf of the United States. Is this the first time ever that you've used an administrative subpoena instead of a search warrant? No, Your Honor. Actually, the DA routinely uses administrative subpoenas in its investigations. For patient records? That's correct. The DA has used them before. The DA informs me that the reason you don't see any cases addressing this is because the doctors who have received the subpoenas have not challenged it. This is nothing new. The DA has been doing this for many years and routinely does this as a matter of course in its investigations. And I'd like to, if I may, just address some of the points that came up before. In terms of the patient's privacy interests, I think Whelan makes clear, the Supreme Court's decision in Whelan makes clear, that to the extent that patients do have a privacy interest in their medical records, there's no violation here. Whelan recognized that there are a number of unpleasant invasions of privacy associated with the provision of health care. There are disclosures to other doctors, to hospital personnel, to insurance companies, to public health agencies. And I think it's worth noting that in this case, Texas State Medical Board investigators served a subpoena on the doctor for 16 patient medical records, and the doctor complied with that subpoena. So I think that's really telling here in terms of the patient's privacy interests. But privacy vis-a-vis health care providers and government people and even drug companies is different than privacy vis-a-vis law enforcement. And so I'm concerned. Why do you need people's abortion records whenever you're trying to invest from 20 years ago that might be in their medical histories and all of their marital problem information and all of those things that people tell their doctors in the most private of conversations? Why do you need in their history of Second Amendment, which one of the amicus points out, why do you need that in order to determine about controlled substances? I think there are a lot of points in there, Your Honor. Let me try to address them, if I may. I think, first of all, the privacy interest doesn't really differ if it's the state medical board requesting the information versus if it's the DEA. And I think you have to keep in mind here that the DEA's investigation with respect to the prescription of controlled substances, these are scheduled substances that have a potential for abuse, either psychological or physical dependence. And I don't want to go beyond the record, but there are a lot of news stories about the potential for abusive prescription drugs, people addicted to painkillers. And so there's a very real public health issue here. Are the patients targets of this investigation? No, not specifically, Your Honor. If the patients are not targets, then why does it have to be? I want you to answer the other question, too. But I want to know why it can't be patient one, patient two, patient three, until you have some specified targeting of a patient. The reason is that the DEA needs to match up the medical records with the suspicious prescriptions that have been identified. But you can do that through identifying patient one and patient... Well, no, because the DEA has separate... What led to the subpoena for the medical records is that the DEA received tips from pharmacists and got some information from the state's prescription management or monitoring database that identified suspicious prescriptions. So they have prescription information, and they need to match up that information, which is associated with particular patient names, with the medical records. And only those people's records are being sought? That's correct, Your Honor. And with respect to the information that's being sought, it is related specifically to the prescription of a controlled substance. So the DEA is not seeking all sorts of other information that may be in the medical history. But you are seeking the entire medical history. Well, no, that was the initial subpoena, that is true. But during the course of negotiations, the magistrate specifically requested that the parties meet and confer and try to limit the scope of the subpoena. And in the course of that, the DEA did limit the subpoena to information specifically relating to the prescription of controlled substances. But Judge O'Connor's order doesn't say that. So are you saying that the DEA agrees to be bound by what the magistrate judge limited rather than what's in the district court's order? Our understanding, the magistrate judge did limit his recommendation to the subpoena as narrowed during the course of the proceedings. So tell me what your understanding of the narrow nature of the subpoena is now. It is requesting information in the patient's medical records specifically relating to the prescription of a controlled substance. So if it's about their marital history or their guns or their abortions, you are not, that is not, so they can cull the medical records accordingly. That's true, yes, that is exactly right. Before they turn them over. That is correct, Your Honor. And I also want to mention that even in terms of the original subpoena, it was limited to a one-year period of time. I guess it was closer to 13 months, I think, from October 2012 to November 2013. So this was very specific information that they are requesting here. So it's not the entire medical record that the doctor has. That's correct, Your Honor. Have the patients been notified, to your knowledge? To my knowledge, no, but there is nothing that's prevented the doctors from notifying them. According to the district court's order. That's right. There was initially a nondisclosure provision in the subpoena, which the magistrate judge struck. The government did not object to that. And so nothing has precluded the doctor from notifying his patients. If they aren't targets, then why would you object to a procedure like the Third Circuit uses? We don't really think it's necessary here. I mean, I think the government has a very compelling interest here and has narrowed the subpoena to seek only that information relating to the prescription of a controlled substance. I think what the Third Circuit was concerned about was information that may be irrelevant to the particular investigation. I believe it was an OSHA investigation there. And the Third Circuit was concerned that there might be other information unrelated to the employment and to the particular issue that OSHA was investigating. But here we've narrowed the subpoena. But if they're not targets, then why do your SEC cases not— why aren't they a little bit inapposite? You know, the cases that you cited about, well, the SEC target shouldn't be tipped off. This is not tipping off the target. So why shouldn't we give that extra precaution in a case where it's not tipping off the target? I think it's a matter of delay and just that it's unnecessary. But haven't we already had a substantial delay? So what difference is another month? We have. I mean, in this particular case, there may not be. But in other cases, I think there would be an issue of delay. And I think I'd also point out that, you know, the Third Circuit is sort of an anomaly. You know, the Fourth Circuit, for example, upheld the enforcement of the subpoena for medical records under the Attorney General's subpoena authority under 18 U.S.C. 3486 to investigate health care fraud and did separately balance the way the patient's privacy interests but saw no need to notify the patients separately. And I think that's the better case to look at than the Third Circuit's. We think the Fourth Circuit is a much better decision in that respect. And I would like to point out, though, and, you know, also just one more thing in terms of, you know, whether the patients are targeted. You know, when Dr. Abbas Zeta died, the SEC actually informed his estate that they were terminating the investigation into prescription activity associated with his DEA registration number and withdrew the subpoena for medical records. And so if the patients had, in fact, been the real targets of this investigation, there would have been no reason to terminate the investigation into prescriptions associated with his DEA registration number. Well, but we don't... We can't presume that everything's done logically, so, you know, we can't be making these assumptions. Well, but I think it is a helpful thing for you to take note of, Your Honor. Any further questions? Okay, if there are no further questions, we'd ask that you affirm the judgment of the district court.  A lot to cover. With the justice, I just have a different idea. I'm going to work backwards. You heard a lot of things here about what's going on in this investigation. It does not appear in the record. Her description of what is being looked for is invisible when you look at this file. The DEA, which is a big part of our problem, the DEA hasn't told us what they're looking for, what violations are at issue, et cetera, and that's very relevant for what information is needed by the government because different violations require different types of evidence. They're looking at... I thought that the order that was actually issued takes you pretty far down that path with regard to controlled substances. Whether John Jones has been prescribed a controlled substance or not gives him very little privacy interest in that phenomenon given the reality of the regulation of controlled substances and what happens in reality to the complete want of privacy in the marketing of that information. So, I mean, that's pretty hard for me to get a privacy interest on that. As to the prescriptions, as to those type of things, but not as to the diagnosis test, as to patient communications. The government here purports to limit it again, but she still uses the same language, related to, which was the problem with the magistrate judges accepting the government's limitation on the subpoena, quotation marks, because it's not a limitation. She stipulated, though, I mean, I think that she's bound by what she said to this court today as to what the scope is, and it's much narrower than what we came in here thinking. DEA's doing that after a magistrate ruling, after objections to the magistrate ruling in which they took a different position in filing on an appeal to this court. So what? So what is that the DEA initially... The question is what's actually going to go down, and if you get it narrowed, are you not accepting what they're saying? One, I'd like to see a transcript of exactly what the limitation was to tell whether I have problems with that particular limitation. It seemed that she was letting us take out basically a pretty carte blanche to decide what communications were. We'll get one probably tomorrow from this electronic, not a transcript, but you can listen tomorrow to this. But you should... If you were trying to keep those abortion records and things that you brought up secret, if there are some, then you certainly have already succeeded in benefiting privacy in that way today. Then I think we may have fixed much of our client's problem, if it's what I hear, that I think we can take out patient-directed patient communications, we can take out diagnostic tests. We limit it down to now a very narrow thing. I'm not sure how far that goes, but... Yeah, the diagnostic test... The question, if you're talking about controlled substances and then the question of whether there is a diagnostic basis for the prescription, it goes to the heart of the government's interest here in regulating. There's no abuse of using controlled substances if it responds to a medical condition. So what you want to take away is the heart of... Perhaps you're entitled to or not, but it is the government's interest here, whether it's sufficient is a different question, is in matching those two pieces of information. I think the interest, again, depending on the purpose, would ordinarily be matching the diagnosis and the drug. Which would be a problem without patient-identifying information. You know what they're looking for. They're looking for the situation of... You've got John Jones and he's prescribed, week after week, 200 pills of X drug, whatever, controlled substances, and then there's no diagnostic support for that, and the amount, the quantity of those pills, that tells you that that's what they're after. They're not concerned about someone that's ill. But to say that you don't get to look at what those pills were prescribed for, I would think that if I were a doctor, I would want them to know that the pill that I wrote that prescription for was for a diagnosis that I made. And that's what the doctor's interest. The question is, how do they need the patient-identifying information... So they can match it to the suspicious prescription. She told us that. As to the doctor, the issue that he described is matching the doctor's diagnosis and the doctor's prescription. What I believe is at issue, and the government has never told us at any point in this, and still has avoided it, I believe the real issue is a question of whether an employee of Dr. Zeta called in prescriptions that were never made. That's an issue that doesn't go to the underlying diagnosis or anything else. The question is, the only need for matching is, do those exist? Those can be examined just by looking at prescription records. You know, it's hard for me to understand why you're so concerned about the names being matched under the specific circumstances of this case regarding these prescriptions, where you haven't even notified these patients that they might have to give up their records. So if you're so concerned about the patients, then why isn't there some evidence that the patients have been notified and that they care? I just don't understand that at this point. I thought the question was notified of this appeal and whether they had a right to intervene, which I think they had a right. No, I'm talking about once it became clear that the district court was going to allow you to tell them that their records are being subpoenaed, it should have been a letter immediately from the office that said, they've allowed this, and if you wish to do anything, I've been ordered to produce these things, and if you're really concerned about the patients. And so that's why I don't understand that. Initially the government said he would be interfering with a law enforcement agency. But that's not the situation now. After the district court's order, your client has the right to notify the affected patients. And so if you're really concerned about them, I don't understand why they haven't been notified. And these things protect your client. These honing in protects your client, exactly the way it's been honed in, diagnostic related to these prescriptions. Well, a couple of things there. One, you're assuming that there was no notification of the patients. The only thing I can say is I can't say one way or the other. I do know that my recollection is that I'm hesitant to say anything for avoiding attorney-client privilege. But I believe that there were requests to the patients as to whether they would allow records to be produced and that it was given the option of whether they would voluntarily produce them to the government, whether they wanted their records to or not. That's not in the record, and I can't show any of that because it was irrelevant to everything beforehand. The first point at which anybody could have done anything would be on an appeal, at which point the appellants, as far as I know, would not have any opportunity to come in and raise new issues, put in new evidence on appeal. I'm not sure how they could have done anything after the final judgment. The point at which they could have done something was in the district court case, in which case they could have said, here, I've got a fundamental right of privacy because of my abortion, et cetera. I don't know how we could have informed the patients at that point, and I don't know how they could do anything about it afterwards. I'm just saying I'm honestly not aware of any procedures that would allow them to do so. Okay, Counselor. Your time has expired. Thank you.